**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR425-122 |
| | ) | |
| ANGELO HAMILTON, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER AND REPORT AND RECOMMENDATION</u>

Defendant Angelo Hamilton is charged with possession with intent to distribute multiple illicit substances. *See* doc. 1 (Indictment). He requested a hearing, pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964), to determine whether his statements to law enforcement were knowing and voluntary. Doc. 18. He also moved to suppress the fruits of a search of his home pursuant to a Fourth Amendment waiver as part of the terms of his supervised release. Doc. 21. The Government responded to his Motion to Suppress. Doc. 29. On June 8, 2026, the Court held a hearing on both motions. *See* doc. 46. Based on the Government's representation that it did not intend to introduce any of the disputed statements in its case in chief, Defendant withdrew his

1

request for a hearing. *Id.* at 1. His Motion is, therefore, **DISMISSED** as withdrawn. Doc. 18.

Defendant's suppression motion challenges the legitimacy of a search of his residence, conducted by agents of the United States Probation Office ("USPO") with the assistance of local law enforcement on April 30, 2025. *See, e.g.,* doc. 21 at 1. The parties do not dispute that the search was conducted at the instigation of the USPO, pursuant to a special condition of Hamilton's supervised release imposed after a prior conviction in this Court. *See* doc. 21 at 1-2; doc. 29 at 1-2. The Judgement in the prior case provides that, as a condition of his supervised release, Hamilton "shall submit his person, residence, office, or vehicle to a search conducted by a United States probation officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release," which include that he "shall not possess a firearm . . . ." *United States v. Hamilton*, 4:08-cr-210, doc. 29 at 3-4 (S.D. Ga. Mar. 26, 2009); *see also* doc. 46-2 at 2-8 (copy of the prior Judgment including Hamilton's signature acknowledging that he understood the conditions).

Although neither the United States Court of Appeals for the Eleventh Circuit, nor any district court in the Circuit, has discussed the application of a condition of supervised release that authorizes warrantless residence searches, other courts have found them valid. Most persuasively, the United States Court of Appeals for the Second Circuit has found that such a waiver limits a supervised releasee's reasonable expectation of privacy.[1]  *See United States v. Edelman*, 726 F.3d 305, 310 (2d Cir. 2013) ("Persons on supervised release who sign

---

[1]  The Government's response cites to numerous cases involving the Fourth Amendment rights of individuals on state probation, including *Owens v. Kelley*, 681 F.2d 1362 (11th Cir. 1982).  *See* doc. 29 at 4-5.  At the hearing Defendant's counsel acknowledged the legitimacy of that authority.  Given that the Eleventh Circuit's analysis of the legitimacy of the state probation condition is substantially identical to the persuasive authority discussing federal supervised release conditions, discussed below, the Court has referred to the more specifically applicable authority.  *Cf. Owens*, 681 F.2d at 1367-68.

Hamilton's Motion points to *United States v. Carter*, 566 F.3d 970 (11th Cir. 2009), to suggest that the Court must balance "the degree of intrusion on privacy versus the government's interest in supervision."  Doc. 21 at 4 (citing *Carter*, 566 F.3d at 974-75).  However, the diminished expectation of privacy at issue in *Carter* resulted from a condition of the defendant's state probation.  *See Carter*, 566 F.3d at 973. The evaluation the *Carter* court applied, based on *United States v. Knights*, 534 U.S. 112 (2001), involved the determination of the requisite quantum of suspicion when none was explicitly stated in the condition.  *See id.*  In the absence of a specific explicit requirement, *see* 534 U.S. at 114 (quoting state probation term that required submission to search "ay any time, with or without a search warrant . . . or reasonable cause . . ."), *Knights* concluded that, at least, reasonable suspicion was sufficient, *id.* at 121-22.  Based on the specific persuasive authority, discussed below, the Court concludes that, because the specific term of Hamilton's supervised release explicitly requires reasonable suspicion, the balancing required by *Knights* and *Carter* is not necessary here.

3

waivers manifest an awareness that supervision can include intrusions into their residence and, thus, have a severely diminished expectation of privacy." (quoting *United States v. Newton*, 369 F.3d 659, 665 (2d Cir. 2004)) (internal quotation marks and alterations omitted)).   District courts have also recognized the effectiveness of such terms.  *See, e.g., United States v. Johnson*, 2021 WL 3197558, at \*3-\*5 (W.D.N.C. July 28, 2021) (discussing the bases of limitations of supervised releasee's Fourth Amendment rights and concluding: "In short, individuals on supervised release do not enjoy the full protections of the Fourth Amendment and probation officers are not required to have probable cause or a warrant to search the home of a supervisee.").  To the extent that any court has expressed skepticism of such conditions, they have been broader—permitting suspicionless searches of the supervisee's person and residence—than the condition at issue.  *See United States v. Farmer*, 755 F.3d 849, 854-55 (7th Cir. 2014) (vacating a supervised release search condition that required releasee "to submit to searches . . . with no requirement that the entity conducting the search have any suspicion to justify the search.").  Since the condition at issue here does not contemplate suspicionless searches, it is, generally, valid.  *See, e.g.,*

*United States v. Henderson*, 145 F. App'x 346, 349-51 (11th Cir. 2005) (affirming the legitimacy of a search, based upon reasonable suspicion, pursuant to a supervised release condition identical, verbatim, to the condition at issue).

Since the parties agree that the search was undertaken under the authority of the prior Judgment's supervised release condition, and the condition expressly requires "reasonable suspicion of contraband or evidence of a violation of a conditional release," doc. 46-2 at 5, the Court proceeds to consider whether the USPO had the requisite suspicion to invoke the condition's authority. "Reasonable suspicion requires more than a hunch; it requires that the totality of the circumstances create, at least, some minimal level of objective justification for the belief that the person [subject to a search or seizure] engaged in unlawful conduct." *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995). The Supreme Court has recognized that "the relevant inquiry[, in evaluating whether reasonable suspicion exists,] is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *United States v. Sokolow*, 490 U.S. 1, 10 (1989).

5

The Government's brief indicates that the search at issue was instigated when Hamilton's "supervising probation officer [, Christopher Gaines,] received information from an individual that had regular interaction with Defendant that Defendant had a firearm at his residence." Doc. 29 at 5. Officer Gaines testified at the hearing and explained that the "individual" was a former girlfriend of Hamilton's who called to report that he was "harassing" her after she ended their romantic relationship. In the course of her report of the harassment, the witness reported that that she had seen Hamilton with a firearm on more than one occasion and had seen a handgun in his bedroom approximately three months prior to her report, which she described as a black handgun. Gaines testified that, in response to his follow-up questions, she informed him that Hamilton reported he had the gun because of a prior break-in. On cross-examination, Gaines explained that the witness had called to report Hamilton's harassing behavior and reported the firearm in response to his inquiry about the extent of the harassment and her reason for her fear. He explained that it was his suspicion that Hamilton possessed a firearm, in violation of another term of his supervised release, that motivated him to instigate the

6

search.  *See, e.g.,* doc. 46-2 at 4 (imposing a prohibition on possession of a firearm as a term of supervised release).

Gaines testified that he spoke to the witness three times during April 2025; on April 15, April 22, and April 28.  He testified that during the calls, the witness's demeanor was "upset" and "agitated."  During the April 28 report, Gaines testified that the witness reported that she had sought and been issued a protective order from the Superior Court of Chatham County and Gaines received a copy of that order.  *See, e.g.,* doc. 46-2 at 9-13.  During that same call, the witness indicated that a search of Hamilton's residence "might" reveal drugs.  Finally, she provided Gaines with video recordings from a doorbell camera that confirmed her reports that Hamilton had come to her residence, apparently uninvited.  Gaines also testified that Hamilton had previously failed a drug screening, in February 2025.  The USPO notified the Court, but recommended that his supervised release not be revoked.  No further action was taken based on the failed drug test. Based on the combination of those facts, Gaines and his supervising officer, Tim Williams testified, the USPO concluded that it had

reasonable suspicion to search Hamilton's residence pursuant to the condition of his supervised release.

Because the purported basis of the USPO's reasonable suspicion in this case relies, substantially, upon the report of an otherwise unknown source, a specific analytical rubric applies. *See, e.g., Florida v. J.L.*, 529 U.S. 266, 270 (2000). In *J.L.*, the Court distinguished "known informants" from "anonymous tipsters." *Id.* "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, [cit.], an anonymous tip alone seldom demonstrates that informant's basis of knowledge or veracity, [cit.]." *Id.* (internal quotation marks and citations omitted). Despite the lower evidentiary value of anonymous information, the Court recognized that "there are situations in which an anonymous tip, suitable corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion . . . ." *Id.* (internal quotation marks and citation omitted). Moreover, "[t]o have reasonable suspicion based on an anonymous tip, the tip must be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007) (quoting

*J.L.*, 529 U.S. at 272) (internal quotation marks omitted).  In evaluating whether witnesses' reports provide the requisite suspicion, courts consider the totality of the circumstances.  *See Illinois v. Gates*, 462 U.S. 213, 232 (1983); *United States v. Engle*, 2006 WL 1980265, at *2 (S.D. Ga. July 12, 2006) ("The Court . . . must consider the totality of the circumstances in evaluating whether a particular tip provides probable cause to support a search . . . .").

In this case, the reporting witnesses was not "anonymous," but neither was she "known" to law enforcement.  As one of the dissenting judges noted in *Lindsey*, "[g]iving . . . a name does not transform a tipster into a *known* informant whose reputation can be assessed and who can be held responsible if his allegations turn out to be fabricated." 482 F.3d at 1296 (Barkett, J. dissenting) (internal quotation marks and citations omitted).   Additionally, Gaines never interacted with the witness in person.   "A face-to-face anonymous tip is presumed to be inherently more reliable than an anonymous telephone tip because the officers receiving the information have an opportunity to observe the demeanor and perceived credibility of the informant."  *United States v. Heard*, 367 F.3d 1275, 1279 (11th Cir. 2004).   Thus, although her

9

reports are not subject to the same degree of doubt that would be applicable to a fully anonymous and remote tip, they are also not entitled to the same credit as information provided directly from a known source to law enforcement.

Notwithstanding the reasons why the witness's report might reasonably be questioned, there are sufficient indicia that it was credible that the USPO's reliance on it was reasonable. While the witness in this case did not make her report in person, Officer Gaines was able to assess her demeanor, albeit not physically. Moreover, the witness in this case did not hide her identity and, "thereby subject[ed herself] to possible repercussions if [her] allegations were found to be false." *See United States v. Wehrle*, 2007 WL 521882, at \*4 n. 5 (S.D. Ga. Feb. 14, 2007). She also made contemporaneous reports to state law enforcement authorities, including to the Superior Court to secure a protective order, that would subject her allegations to additional scrutiny and potential repercussions, if they were fabricated. She provided corroborating evidence, in the form of the video recordings, that supported her allegations of harassment, if not her allegations concerning the gun or possible narcotics. While the corroborated details

10

are not the purported violation that the USPO conducted the search to investigate, "corroboration of innocent details might change an otherwise insubstantial tip into a proper basis for a reasonable suspicion of criminality." *United States v. McLeroy*, 584 F.2d 746, 748 (5th Cir. 1978); *see also United States v. Fountain*, 736 F. App'x 884, 885 (11th Cir. 2018) ("The reliability of the [anonymous] tip also is increased if the officer observes facts corroborating even the innocent details of the tip." (quoting *United States v. Aldridge*, 719 F.2d 368, 371 (11th Cir. 1983) (internal quotation marks omitted)). Given the totality of the circumstances, including the witness's disclosure of her identity, her contemporaneous reports to state law enforcement, her proffer of confirming evidence, and the consistency of her report with other circumstantial evidence, including Hamilton's failed drug screening, the Court should conclude that her report provided the USPO with the required reasonable suspicion to justify the search, under the terms of Hamilton's supervised release. Thus, to the extent that Hamilton's Motion argues the search was not based upon the requisite reasonable suspicion, pursuant to the term of his supervised release, it should be **DENIED**. Doc. 21.

Hamilton's Motion also suggests, in a substantially perfunctory fashion, that the search was unreasonable in its time and manner. *See* doc. 21 at 5. The term of his supervised release requires that any search be "conducted by a United States probation officer at a reasonable time and in a reasonable manner . . . ." Doc. 46-2 at 5. The Government points to authority, again concerning the application of a state probation term, that acknowledges that law enforcement other than a probation officer, or here the USPO, may permissibly assist in such searches. *See* doc. 29 at 4-5 (quoting *Owens*, 681 F.2d at 1369). Defendant has pointed to no contrary authority that participation by law enforcement, other than the USPO, rendered the manner of the search unreasonable. At the hearing, all of the witnesses testified, as corroborated by time-stamped body-worn camera footage, that the search took place during the day and did not involve any destructive search techniques. In the absence of any argument to the contrary, the time and manner of the search, therefore, appear reasonable. To the extent that Hamilton challenged the time or manner of the search, therefore, his Motion should be **DENIED**. Doc. 21.

In summary, the Court should find that the supervised release condition imposed in Hamilton's prior Judgment was a valid basis for the search, which, in the totality of the circumstances, was based upon reasonable suspicion, and was conducted at a reasonable time and in a reasonable manner. Accordingly, Hamilton's Motion to Suppress should be **DENIED**. Doc. 21. His Motion for Hearing is **DISMISSED** as withdrawn. Doc. 18.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and

13

recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERD AND REPORTED AND RECOMMENDED,** this 23rd day of June, 2026.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

14